May it please the Court, Philip Cherney v. Darius Gaines. Your Honors, had Mr. Gaines received the benefit of his counsel's advice back on January the 3rd of 2000, he would be about six months left to serve at the California Youth Authority. Instead, he has about 20 years left to serve in the California Department of Corrections. I would like to focus my remarks on the ineffective assistance of counsel claim, unless the Court directs me otherwise. It is my position on appeal that the District Court was clearly erroneous in applying the Strickland standard to this case. The court, the District Court, which gave us a very fair hearing, we presented all the evidence I think that was relevant in this case, but I think what the court did is to rely solely on the notion that there has to be some intentional act by the attorney which is duplicitous, and somehow Mr. Davenport, whether there were some doubts about his integrity, his veracity, the court tended to err on the side of the presumption that he was acting effectively. I think there's enough in the record. If I were a prosecutor, which I'm not, to question his integrity from his own declaration and so forth, but I don't think that one has to go that far. What's important is from Gaines' standpoint as a 16-year-old, relying on the advice of counsel, is whether this attorney was negligent, whether he was confused about the law, and I think he was confused about the law, which from my cross-examination of him at the hearing, my purpose in cross-examining him, if it wasn't entirely clear to the District Court, was to probe his knowledge of the juvenile court laws, which had changed dramatically as of January 1, 2000, two days before this young man denounced his guilty pleas. I think what came out at the hearing, at least from my vantage point, was that he was confused, rightfully so. The law had changed dramatically, no longer was carjacking by itself or kidnapping by itself a crime that precluded the juvenile court law. Even if he was found unfit, which the law had not changed on that, unfit for juvenile court proceedings and the benefits thereof, the opportunity to rehabilitate someone who had no criminal record to speak of, but he's precluded as a matter of law by the nature of the crimes, which no question about it, are very serious crimes holding the potential of a life term. But as a 16-year-old coming before the state court without a written plea agreement, and as your honors know from federal district court, you cannot get into a plea without a written plea agreement. In this case, but I guess the question I have for you, Mr. Cherney, is the Superior Court judge was, I guess it was in San Joaquin County, who took the plea, said several times on the record, you know, prison, prison, prison, law, 26 years or whatever the 29, 29 and change. And we have a factual finding that that plea was knowingly and voluntarily entered. No objection or resistance by either your client or his lawyer to the judge's statement as to what he was facing. And in order to grant you the relief that you're asking us to grant, I think we have to find in the face of that record that the district court erred in not overturning the factual finding of voluntarily. Well, that's why I said I wanted to focus my remarks on the ineffective assistance of counsel claim. No, no, no. I think you make a very good point with regard to Mr. Davenport. I understand your point. And I think that came through pretty clearly on the cross-examination. But the problem I'm having is that we then look to the colloquy of the plea and the judge here said it more than once and then proceeded to impose that sentence. And so it's pretty clear from that record that there wasn't any confusion at the time that the plea was being taken as to what he was looking at. Two thoughts. One is, at least in the Eastern District of California, in my experience, there are no pleas without a written plea agreement. This case, there were two drafts of plea agreements on two prior occasions. But on that day, January 3rd of 2000, there's no plea agreement. The court is using words like you understand 654 and you're waving that, whatever that means. But the 16-year-old is before the court. The only time that the court says state prison is at sentencing, not during the plea colloquy. The plea colloquy, the court, the lower court, the state court. I understand I've done hundreds of pleas. I understand how quickly they can go. And it depends. But this is a life term. And this is a 16-year-old. And suddenly 29 years and four months and the court is moving rapidly through those constitutional rights in my view. But I think maybe as indicative of the state of mind of Mr. Gaines and his attorney and his girlfriend who was there, and it strikes me, your honors, that if counsel Mr. Davenport cannot remember even having a conversation with LaWanda Jordan, who testifies in the district court very specifically about going into the jury room and sitting down with her boyfriend, the district court in this case said in its findings that he found her credible. If she's credible and Mr. Davenport, he'd be out by the time he's 25 years old. Now he goes into court in an emotional state. I'm not saying that he was incompetent. But I think that that to some extent explains why he's not raising questions with the court. And I would like to have an opportunity to respond. So okay. You want to save the rest of your time? Thank you. Very good. Thank you, Mr. Turney. Mr. Riley. Thank you. Good morning. May it please the court, Justin Riley on behalf of the warden. I should make clear initially that Gaines never had the option of leaving prison at the age of 25. He just never did. Regardless of any alleged misadvice, his options were to be out 20 years from now or to probably never be out of prison at all. Those were his two options in actuality. Well, we know what the law is. The question is, did Mr. Gaines understand at the time he entered the plea based on what his lawyer had said to him? Was he confused? And can we conclude from the record that the superior court judge adequately informed him of what he was facing? So that without regard to what his lawyer told him when Mr. Gaines entered the plea, he clearly understood that he was going away for a very long time. I believe that's a major part of the evidence against Mr. Gaines's claim is what the trial court said at the change of plea hearing. In addition to those pronouncements, he said state prison, I believe it was 10 times. He said imprisonment. He gave a statement that was nothing like being out at the time he's 25. I believe if he wanted to be out by the time he was 25, it would have been a little over eight years from the date of sentencing. 29 years, four months is nothing like eight years. And that's a large part of what went into the district court's analysis of these claims is that Mr. Gaines's allegations of what actually was the state of the law, that he found that pretty much no attorney would give this kind of oddball advice. It would be almost criminal for Mr. Davenport to give this kind of advice. In fact, Mr. Gaines at the district court level alleged almost criminal allegations against Mr. Davenport by saying that he coerced Gaines into the plea by enlisting the help of his family. So far out there, the allegations were that the district court just couldn't believe him. It was a credibility contest after the evidentiary hearing to be sure. The district court resolved that contest against Mr. Gaines because of these things. The other thing I'd like to touch on is the... Before you touch on something else, are you saying that if the attorney had said to his client, in my view, you'll be out in 25 years, but when the plea of guilty was taken, the court made it clear that the possible punishment was longer than that, that we would, we would not be able to get him out of jail. Let me see if I can clarify my understanding of your question. Are you saying that if the sentence was 25 years or whether the defendant would get out at the age of 25? Let's assume that the lawyer did what the girlfriend said. Okay. Would be out by... I believe 18 was one of the options. All right. So that'd be two years. Let's assume that's true. Okay. Is... Can we ignore that or can we affirm because the trial court indicated that the sentence would be something different? I believe so because the second prong of the Hill versus Lockhart gloss on Strickland requires that this court also find that even though there was misconduct, and we're assuming that for the sake of this question, the defendant also, or the appellant must also show that he would not have pled guilty to the sentence that he received. And that's actually what I was going into. So I'll transition into that unless I've not answered your question. Oh, I'm sorry. Is your answer to my question that the trial court cleaned up whatever possible problem there was in the colloquy between the lawyer and his client? I believe that's part of the evidence. Yes. That's not the only thing that you would look at. You look to whether or not the appellant would have still pled guilty even given this alleged misadvice. And part of the record we look at is what the trial court said. Part of the evidence we look at is the record of what the trial court said. I think the trial court went a long way to clean up any alleged misadvice. But also you have to look at the sentence that the appellant was facing. He was facing, I believe that in his opening brief, he admitted to facing more than one life term. If I've calculated correctly, he was facing at least one life term and several lengthy determinant terms. He was never going to be out of prison if he was sentenced to the maximum. Never, ever. No hope. The problem that the counsel is presenting to us is, could this 16-year-old know that based upon what the 16-year-old thought the sentence would be? Oh, absolutely. The record shows that through conversation at the place of his confinement and conversation with his relatives and loved ones, he started to realize if only those people, I think Mr. Davenport testified that he told the appellant that he would never be out of prison if he got a life term. But it's clear on the record that the appellant did recognize that a life term was never to be out of jail. So he specifically turned down the first plea agreement, which was 16 to life, because he knew that that would mean he wouldn't be out of prison. So when he got this determinant term, a term that the prosecutor was never offering up until the eve of trial, this was an eve of trial kind of, this is why there was no written plea agreements. This was, we're on the verge of trial. Are you sure you don't want to plead guilty? I really don't want to have this trial, that kind of thing. And he got a determinant term. For the first time, he had a glimpse of hope, a light at the end of the tunnel. He would be getting out of prison, 29 years, 8 months after his initial incarceration, minus good time. I think that leaves him at the age of 41. Now, the difference between never getting out of prison and getting out when you're 41 with lots of life still left, is huge in determining whether or not the appellant would have still pled, even though the advice might have been incorrect. That was a long answer to your question, but I hope I got it. This credibility determination, and the district court's, specifically the district court's resolution of this credibility determination, was not clearly erroneous because of these things. At all times, because of the charges and his status as, let me back up. In addition, the appellant had a juvenile fitness hearing. He requested that the court treat him as a juvenile. After a hearing on the matter, the trial court denied that request. He knew he was going to be treated as an adult. But he could still, under the law, before it changed on January 1, he could be bound over to superior court and prosecuted as an adult, but he could still have been sentenced to the custody of the California Youth Authority, could he not? Respectfully, your honor, I think that's incorrect. I'm sorry, respectfully, I heard respectfully. I think that's incorrect. I lost you. That's incorrect under. You think I'm wrong, respectfully. Okay, tell me why I'm wrong. Sorry. That's what we're here for, educate me. Because, juvenile law isn't my strongest point, but the prior version of juvenile law and the subsequent version of juvenile law, the change was January of 2000. Under both versions, if he were found not fit to be tried as a juvenile, and given the severity of these charges, there was no opportunity for him to be treated as a juvenile. On the one instance, juvenile law under both versions, you take the amount of the sentence, you add it to the defendant's age, and if you come up with a number more than 25, you can't do it. Also, you look at the list of crimes. I think opposing counsel alluded to the fact that serious or violent felonies and particularly the crimes which he pled to also foreclose that. Did Mr. Davenport understand that? I guess that's the point Mr. Cherney is making. What does the record at the habeas hearing show on that? He doesn't remember, and fortunately I was at the habeas hearing. With all due respect to opposing counsel, what Mr. Davenport was testifying to was that he hadn't practiced juvenile law for I believe it was five to six years at the time of the hearing earlier this year. Five to six years, no juvenile law. He stopped right about the time the law changed. He didn't remember this case almost at all. I think the record reflects that. And what happened was his opposing counsel went to him with a restatement, I believe it was, of juvenile law, said, according to this, what you're reading here, could it possibly be that the trial court could have sentenced him to CYA, California Youth Authority? And he just kind of read it for a while and he kind of, I guess it's a legal possibility maybe, but it just wasn't an actual possibility. Mr. Davenport never conveyed to the appellant that he was ever going to get anything less than prison time. More importantly, the prosecutor never offered anything less than a life term up until the eve of trial when it was 29 years, four months. I have gone over them. Sorry. If there are any more questions, I'd love to answer them. I don't think so.  Thank you. Mr. Churney? Mr. Churney, while you're collecting your papers, let me just ask you one question. What happens if we agree with you? What happens is the conviction is vacated and then your client faces a life term without the chance of ever getting out. Am I correct? Your Honor, as a practical matter, I know the answer to the question. Well, that's what I'm talking about, the practicalities of the case. I'm not a – my client is giving me the charging orders. Oh, look, I'm not – So I understand, we all understand that he goes back and faces a life term. Okay. And while we're talking practicalities, if we were to grant relief on what I think is a relatively minor claim in comparison to the major claim you're urging on the double jeopardy issue, are we only talking about eight months, an additional eight months on his sentence for the kidnapping, false imprisonment? Yes, I think so. Okay. Right. A couple of points I'd like to respond to. You know, Mr. Davenport has no recollection. He has – his file is virtually nonexistent. He's operating on a recollection that, at least from my examination of him and in my reply brief, I quoted, I think it's page 80 of the – on redirect examination by Mr. Riley, that Mr. Davenport admitted again that it was possible, in his mind, that Mr. Gaines could receive a youth authority commitment. With regard to Judge Duffy, I'm very mindful of the consequences. But I think this is a gentleman who has pursued this from – virtually from the time he left the courtroom. I've got to tell you something. Once upon a time, I was a lawyer representing clients, too. All right? We do the best we can with what the client wants. Thank you, Your Honor. And it's my honor to be here to represent before the court the interests of my client before our Constitution. And with that, unless the court has any additional questions, I'll submit it. Attorney, you do a very effective job, and your client should be proud of the work that you're doing. Thank you, Your Honor. Thank you. The case that's argued is submitted.
judges: Alarcon, Tallman, Duffy